UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>          Plaintiff,<br><br>     v.<br><br>$7,000.00 IN U.S. CURRENCY, and,<br>$8,000.00 in U.S. CURRENCY,<br>          Defendants. | )<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>) **04　11555 NMG**<br>)<br>) MAGISTRATE JUDGE ___ |

### VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, in a civil action of forfeiture pursuant to Title 21, United States Code, Sections 881(a)(6), alleges that:

1. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345, 1355, and 1356. Venue is appropriate pursuant to 28 U.S.C. § 1395.

2. The in rem defendant properties are now, and, during the pendency of this action, will be within the jurisdiction of this Court.

3. The defendant properties are identified as:

   a)   $7,000 in United States currency, seized from Gary Sanders on November 8, 2003; and

   b)   $8,000 in United States currency, seized from Chad Miller on November 8, 2003,

(collectively, "the Defendant Currency").

4. As detailed in the Affidavit of United States Drug Enforcement Agency Special Agent David O'Neill, attached hereto

as Exhibit A, and incorporated herein by reference, the United States has probable cause to believe that the Defendant Currency represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the federal drug laws, and/or proceeds traceable to such an exchange, and/or moneys, negotiable instruments, or securities used or intended to be used to facilitate such a violation.

5. The Defendant Currency, therefore, is subject to seizure and forfeiture to the United States of America, pursuant to 21 U.S.C. §§ 881(a)(6).

WHEREFORE, the United States of America prays:

1. That a warrant and monition, in the form submitted herewith, be issued to the United States Marshal for the District of Massachusetts, commanding him to serve process upon the Defendant Currency, and to give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

2. That judgment of forfeiture be decreed against the Defendant Currency;

3. That thereafter, the Defendant Currency shall be disposed of according to law; and

4. For costs and all other relief to which the United States may be entitled.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By: /s/ JHZ
JENNIFER H. ZACKS
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Dated: 7/13/04

## VERIFICATION

I, David O'Neill, Special Agent, United States Drug Enforcement Agency, state that I have read the foregoing Verified Complaint for Forfeiture In Rem and the Affidavit, attached as Exhibit A, and that the contents thereof are true to the best of my knowledge, information and belief.

_____
David O'Neill, Special Agent,
United States Drug Enforcement
Administration

Dated:


COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.

Boston

Then personally appeared before me the above-named David O'Neill, Special Agent, United States Drug Enforcement Administration, who acknowledged the foregoing to be true to the best of his knowledge, information, and belief, on behalf of the United States of America.

Subscribed to and sworn to before me this 13th day of July, 2004.

_____
Notary Public
My commission expires: 3/15/09

KAY-BETH WHITTEN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
May 15, 2009

**EXHIBIT A**

**AFFIDAVIT**

I, David X. O'Neill, being duly sworn, depose and state:

1. I am a Special Agent in the Boston office of the United States Drug Enforcement Agency (DEA) and have been so employed for the past eight years. Since January 2003, I have been assigned to the Logan Airport Drug Task Force and my duties have included the identification and investigation of drug traffickers using various types of transportation -- including airplanes, trains, buses -- to transport drugs. Before my assignment to the Logan Airport Drug Task Force, I was assigned to Mobile Enforcement Team (MET). In that capacity, my duties included assignments to various towns in the Massachusetts area, to identify and investigate local violent drug trafficking organizations.

2. As part of my official duties, I have received training in the investigation of illegal narcotics trafficking, including training in the methods and procedures commonly employed by narcotics traffickers to transport drugs and/or drug proceeds, in the methods commonly used by drug traffickers to avoid detection, and in the methods and procedures used by law enforcement to detect, monitor and investigate drug traffickers and distributors. I have also received additional special training in asset forfeiture of assets related to illegal drug trafficking. I have also attended a number of additional courses and seminars on narcotics investigation techniques. During the course of my

employment with DEA, I have been involved in hundreds of investigations involving drug trafficking, many of which later resulted in the arrest and conviction of drug traffickers and/or the seizure of controlled substances and the seizure and forfeiture of proceeds of illegal drug trafficking.

3. As a result of my personal participation in this investigation, my conversations with other agents and officers, and my review and analysis of reports and other documents, I am familiar with all aspects of this investigation. This affidavit is based both on my personal knowledge and on information that I have received from a variety of other sources, including other law enforcement officers and agents.

4. This affidavit does not contain every fact that I know about this investigation, but is limited to that information necessary to demonstrate probable cause for forfeiture in rem against the following property:

   a) $8,000 in United States currency seized from Chad Miller on November 8, 2003; and

   b) $7,000 in United States currency seized from Gary Sanders on November 8, 2003 (collectively, "the Defendant Currency").

5. As described in more detail below, the Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. §881(a)(6) because it represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person

in exchange for a controlled substance or listed chemical in violation of the federal drug laws and/or proceeds traceable to such an exchange, and/or moneys, negotiable instruments, or securities used or intended to be used to facilitate such a violation.

6.   On November 8, 2003, along with three other members of the Logan Airport Drug Task Force, I conducted a routine surveillance of Amtrak Train #82, en route from Providence, RI to Boston, MA. At approximately 5:45 pm, during the trip between Providence and Boston, Task Force Agent Jeff Lugas noticed a white male, later identified as Chad Miller, speaking briefly with a second passenger, a black male, later identified as Gary Sanders. Miller and Sanders were not seated together and appeared to have no other communication during the train ride.

7.   As the train approached Boston, Miller retrieved a bag and walked to the front of the train car, while looking from side to side and up and down the aisle of the train. Shortly thereafter, Sanders left his seat, retrieved a bag, and walked to the back of the train car.

8.   When the train arrived at South Station in Boston, Miller exited the front of the train car and walked down the train platform, repeatedly looking back and appearing nervous. Sanders exited the rear of the train car and proceeded down the train platform, walking approximately 20-30 steps behind Miller. The two

3

men did not greet or acknowledge each other for approximately 100 yards, until they had almost reached the train station's Atlantic Avenue exit. At that point, the two men began walking together. When approached by law enforcement agents, both Miller and Sanders agreed to answer questions.

9. Miller proceeded to make a number of inconsistent statements. Miller said that he was returning to Boston from Atlanta. First, Miller said he had stayed with friends. Miller later stated that he had stayed at a Hyatt Hotel. However, when asked, Miller could not recall his room number at the Hyatt Hotel, and changed his story, stating that he had stayed at a Hampton Inn and producing a hotel key that apparently came from the Hampton Inn. Miller first stated that he had paid for his hotel room in cash, but then stated that he had used a credit card to reserve the room. Miller also stated that he knew Sanders and that Sanders was the friend that Miller had visited in Atlanta.

10. When asked what he did for work, Miller stated that he ran his own entertainment company, Dog Tag Productions, but was unable to state what his yearly income was, how much money he had made from his last show, or the name of the theater where his last show was held.

11. Other aspects of Miller's statements were contradicted by Amtrak records. When asked, Miller stated that while he was in Georgia he had changed his Amtrak reservation to extend the length

of his stay. In fact, Amtrak records revealed that Miller had actually changed the date of his departure from Boston prior to making the trip to Atlanta. Miller claimed that he had paid for his travel to Atlanta with a credit card and for his return trip in cash. In fact, Amtrak records showed that Miller had paid cash for the entire trip.

12. In response to a question, Miller said that he was not carrying any weapons or drugs, and that he was carrying "a few dollars" in cash. Miller then stated that he was carrying about one thousand dollars. Miller agreed to a search of his person and luggage and was found to be carrying a knife, a clear plastic bag containing approximately a half ounce of green leafy matter, that, based on my training and experience, I believe to be marijuana and $8,000 in cash, consisting of 80 $100 bills. The $8,000 was separated from the rest of Miller's money and was arranged in eight folded packets of $1,000 each. Based on my training and experience, this method of separating money is frequently used by drug traffickers and is commonly known as "dealer folds." In other cases that I have investigated involving known drug traffickers, I have seen them use this method of folding money.

13. When asked why he was carrying so much money, Miller stated (in contradiction to his earlier statements about using credit cards) that he always used cash. Miller also claimed that

he had needed the cash to "party" and pay for strippers in Atlanta. Miller claimed that he had not obtained the money from a bank, but that, before his trip to Atlanta, he had taken $12,000 from a safe.

14. When asked if there was any reason why a drug dog would alert to the money, Miller noted that he believed that a drug dog would alert to any cash, and further specified that he had smoked a lot of marijuana in his hotel room and that the smoke may have settled onto his bag.

15. While two of the officers were talking with Miller, the other two officers talked with Sanders, who had also agreed to be interviewed. Sanders also agreed to a search of his bag and his person. Initially, Sanders said that he was returning to his home on Nantucket from Georgia, where he had spent the summer with an aunt and uncle in Vidalia, GA. However, Sanders later stated that he had stayed in Lawrenceville, GA (a town located approximately 200 miles from Vidalia), and was found to be carrying mail addressed to himself at an address in Lawrenceville, GA. Sanders then said that he had stayed for part of the time in Lawrenceville, GA with his girlfriend. However, he refused to state whether the address on the letters was that of his girlfriend or to explain why he had had mail sent to himself at that address.

16. Sanders stated that Miller was a high school friend of his, but that Miller had not stayed with Sanders in Georgia, but had stayed in Atlanta, and he, Sanders, had stayed in

6

Lawrenceville.

17. When asked, Sanders stated that he was carrying $7,000 in cash. Like the cash carried by Miller, the money in Sanders' possession consisted of $100 bills. These 70 $100 bills were folded into separate packets of "dealer folds" (as described above), with each packet containing $1,000. Sanders was unable to explain why he had folded the money in this manner. Sanders' bag was found to contain a small glass container. Based on my training and experience, the smell and appearance of the residue in this container appeared to be marijuana residue.

18. Sanders stated that he had earned the money from doing odd jobs for his aunt and uncle in Vidalia, such as helping at his uncle's mortuary and his aunt's rest home. However, Sanders was unable to specify how much he was paid for this work, stating "a couple hundred here and there." Sanders was also reluctant to provide an address for notification, first providing a post office box, then stating that his mailing address was his mother's address on Nantucket. When one of the agents commented that the address given by Sanders for his mother sounded unusual, Sanders stated that his mailing address was the post office box that he had provided. When asked where he slept, Sanders responded that he had no fixed address.

19. At approximately 7:00 pm, Massachusetts Bay Transportation Authority (MBTA) Police Officer James Murray arrived

with his trained narcotics-detection dog, Brit. Brit first was shown Miller and Sanders' bags (which did not contain the currency) and did not alert to either bag. The officers then took three clean boxes and placed the $8,000 seized from Miller in one of them. Brit alerted by scratching and biting to the box containing the $8,000. The officers then took three new clean boxes and put the $7,000 seized from Sanders inside one of them. Brit alerted to the box containing the $7,000 by scratching and biting. Brit even took the money out of the box and placed it at Officer Murray's feet.

20. There is a pending state warrant for Miller's arrest on narcotics charges, based on his possession of marijuana as described above. Currently, he has defaulted by not appearing in state court.

21. Based on the information detailed above, I have probable cause to believe that the Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. §881(a)(6) because it represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the federal drug laws and/or proceeds traceable to such an

8

exchange, and/or moneys, negotiable instruments, or securities used or intended to be used to facilitate such a violation.

Signed under the pains and penalties of perjury this /3/( day of July, 2004.

*David X. O'Neill* 
David X. O'Neill
Special Agent, DEA

Subscribed and sworn to before me this ___ day of July, 2004.

*Kay-Beth Whitten*
Notary Public
My commission expires: 5/15/09
Date:

KAY-BETH WHITTEN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
May 15, 2009

9

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) **United States of America v. $7,000 in USC & $8,000 in USC**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ___  I.  160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_  II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

   ___  III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   ___  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   ___  V.   150, 152, 153.

   **04 11555 NMG**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐   NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐   NO ☒

   If so, is the u.s.a. or an officer, agent or employee of the u.s. a party?
   YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 usc §2284?
   YES ☐   NO ☒

7. Do **all** of the parties in this action, excluding governmental agencies of the united states and the commonwealth of massachusetts ("governmental agencies"), residing in massachusetts reside in the same division? - (See local rule 40.1(d)).
   n/a    YES ☐   NO ☐

   A. If yes, in which division do **all** of the non-governmental parties reside?
      Eastern Division ☐    Central Division ☐    Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   n/a    YES ☐   NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Jennifer H. Zacks, Assistant U.S. Attorney
ADDRESS  United States Attorney's Office, 1 Courthouse Way, Suite 9200, Boston, MA 02210
TELEPHONE NO.  (617) 748-3100

(Cover sheet local.wpd - 09/12/02)

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$7,000.00 in U.S. Currency, and
$8,000.00 in U.S. Currency

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jennifer H. Zacks, Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210    (617) 748-3100

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

The Government seeks to forfeit currency pursuant to 21 U.S.C. §881(a)(6).

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE _____
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____