UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>$7,000 IN U.S. CURRENCY, and<br>$8,000 IN U.S. CURRENCY,<br>Defendants. | )<br>)<br>)<br>)<br>)   C.A. No. 04-11555 NMG<br>)<br>)<br>)<br>)<br>) |

## MOTION IN LIMINE TO
## SUPPRESS EVIDENCE

NOW COME Chad Miller and Gary Sanders, the rightful owners of the seized property, by their counsel, and respectfully request that all evidence and statements taken from them during an illegal government interrogation be suppressed at the trial of this matter. In support of this motion, Messrs. Miller and Sanders state the following:

1. Messrs. Miller and Sanders were stopped and interrogated and searched on November 8, 2003 by Special Agents of the Drug Enforcement Administration. As a result of that stop and search, the currency which is the subject of this forfeiture action was seized by the government.

2. The government, in its Verified Complaint, has alleged that the currency in question was furnished or intended to be furnished in exchange for a controlled substance. *Verified Complaint, paragraph 4.* Indeed, the forfeiture action has been brought under the accolades of 21 U.S.C. section 881, which provides that "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such

an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. section 881 (a)(6).

3. However, the sole evidence which the government points to as supporting its allegation is not admissible as evidence and must be suppressed.[1]

4. In support of this motion, Miller and Sanders state the following:

    a. Miller was stopped and interrogated and searched on November 8, 2003 by Special Agent David X. O'Neill, Special Agent of the Drug Enforcement Administration. Miller was stopped shortly after he disembarked from an Amtrak Train which had traveled from Providence, R.I., to Boston. *See Affidavit of David X. O'Neill, attached hereto as Exhibit A (hereinafter, "O'Neill Affidavit")*.[2]

    b. The stated reasons for stopping Miller were as follows:

        (1) While Miller was on the train, Miller (a white male) spoke briefly with another passenger (Gary Sanders, a black male) although they had not been seated together previously on the train. *O'Neill Affidavit, par. 6.*

        (2) As the train approached Boston, Miller retrieved his bag and walked to the front of the train car; he was looking around as he

---

[1] Simultaneous with the filing of the instant action, criminal charges were filed against Messrs. Miller and Sanders in state court. The actions were styled <u>Commonwealth v. Chad Miller</u>, Boston Municipal Court docket no. 04-0392 and <u>Commonwealth v. Gary Sanders</u>, Boston Municipal Court docket no. _____. Upon the defendants' motions to suppress evidence, the court dismissed both actions, finding that the sole evidence tending to convict the defendants was inadmissible.

[2] The affidavit was submitted as an exhibit to the Verified Complaint filed in this Court.

    walked. Sanders, the black male, retrieved his bag and walked to the rear of the train car. *O'Neill Affidavit, par. 7.*

   (3) When the train arrived at South Station, Miller exited from the front of the train, still looking around, and seemed nervous. Sanders exited from the rear and was walking "approximately 20-30 steps behind." *O'Neill Affidavit, par. 8.*

   (4) The two men did not greet or acknowledge one another until they had almost reached the exit; at that point, they began walking together. *O'Neill Affidavit, par. 8.*

c. According to the O'Neill Affidavit, both men agreed to answer questions when approached. *O'Neill Affidavit, par. 8.* However, Miller's affidavit (filed in the Boston Municipal Court and appended hereto as Exhibit B) reveals that he and Sanders were instructed to accompany the officers to a separate part of the building, where they were interrogated separately and at length. There were five or six plain clothes officers and two or three uniformed officers. Miller's affidavit reveals that, in light of the circumstances and the sheer number of police officers present, he did not feel free to leave until the officers gave him permission to do so. *Affidavit of Miller, par. 3.*

d. At no time were Miller or Sanders arrested or given their *Miranda* warnings. Miller believed, however, that he was in police custody and that he was not free to leave or to refuse to cooperate. *Affidavit of Miller, par. 5.*

e.  During the interrogation, Miller made a number of damaging statements, none of which should be used against him in the instant prosecution. $8,000 in cash was seized from Miller's person; the money was folded in a suspicious manner and caused an MBTA drug dog to "alert". The money, the manner in which it was folded, and the drug dog's reaction should all be suppressed as well, because the defendant would not have allowed the search had he not believed himself to be in custody. *See O'Neill Affidavit, pars. 9-14, 19.*

5. As the Boston Municipal Court ruled, in the criminal action (see footnote 1, above), the evidence was taken against the constitutional rights of Miller and Sanders, and must be suppressed. In the instant matter, the fruit of an illegal stop should not be used to establish probable cause to support a forfeiture under 21 U.S.C. section 881.

In light of the foregoing, and because the initial stop and search were unlawful, all of the statements of Miller and Sanders, and all evidence seized from them should be suppressed at the trial of this matter.

> Respectfully submitted,
>
> Chad Miller and Gary Sanders,
> By their counsel,
>
> /s/ John J. Bonistalli
> John J. Bonistalli/BBO # 049120
> LAW OFFICES OF JOHN J. BONISTALLI
> One Financial Center
> Boston, MA 02111
> (617) 695-3755