UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>$7,000 IN U.S. CURRENCY, and<br>$8,000 IN U.S. CURRENCY,<br>Defendants. | C.A. No. 04-11555 NMG |

## MEMORANDUM IN SUPPORT OF
## MOTION IN LIMINE TO SUPPRESS EVIDENCE

NOW COME the owners of the seized property, Chad Miller and Gary Sanders, and submit the following memorandum in support of their motion to suppress certain evidence seized by the government. In short, Miller and Sanders state that the search and seizure were illegal, were done in violation of their constitutional rights, and that the evidence gleaned from that search should be suppressed, as the government should not be allowed to rely upon illegal evidence in order to secure a forfeiture under 21 U.S.C. section 881 (a)(6).

As set forth in the accompanying motion, Miller was stopped and interrogated on November 8, 2003 (and had his personally property searched and his money seized) as a result of his behavior while on board an Amtrak train. In short, he was stopped because he (a) spoke to a fellow passenger; (b) left the train from an exit different from the fellow passenger with whom he had spoken; (c) walked near the other passenger – but not with him – until they had almost reached the train station exit; and because he (d) was looking around and seemed nervous. This seemingly innocuous behavior earned Mr. Miller a

lengthy interrogation behind closed doors, at the hands of DEA agents. The stop was illegal and, as a result, Miller's statements and the seized property (along with its condition) must be suppressed. Miranda warnings must be given before a suspect is subjected to custodial interrogation." United States v. Ventura, 85 F.3d 708, 710 (1st Cir. 1996). In this case, no Miranda warnings were ever given.

In Terry v. Ohio, the Supreme Court first recognized "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. 1, 22 (1968). This authority permits officers to "stop and briefly detain a person for investigative purposes," United States v. Sokolow, 490 U.S. 1, 7 (1989), and "diligently pursue[] a means of investigation . . . likely to confirm or dispel their suspicions quickly." United States v. Sharpe, 470 U.S. 675, 686 (1985).

As a general rule, Terry stops do not implicate the requirements of Miranda because 'Terry stops, though inherently somewhat coercive, do not usually involve the type of police dominated or compelling atmosphere which necessitates Miranda warnings.'" United States v. Streifel, 781 F.2d 953, 958 (1st Cir. 1986), quoting United States v. Bautista, 684 F.2d 1286, 1291 (9th Cir. 1982). The U.S. Supreme Court has analogized Terry stops to routine traffic stops in finding that they are not custodial stops for Miranda purposes. Berkemer v. McCarty, 468 U.S. 420, 440 (1984) ("The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda.")

In this case, the stop cannot be analogized to a "routine traffic stop" in any way, shape, or form. Miller was taken to a secluded room within South Station, interrogated and made to wait while a "drug dog" was brought to further the investigation. Miller clearly did not feel free to leave, and therefore his statements are in question. In short, Miller was subjected to a *de facto* arrest within the meaning of federal constitutional law. He should have been given his Miranda rights and was not. "There is no scientifically precise formula that enables courts to distinguish between investigatory stops . . . and . . . 'de facto arrests'." United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994). The "ultimate inquiry," however, is whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Thompson v. Keohane, 516 U.S. 99, 112 (1995) (internal quotations and citations omitted). In assessing whether there was a "restraint on freedom of movement," "a court must examine all the circumstances surrounding the interrogation." Ventura, 85 F.3d at 711 (internal quotations and citation omitted). This is an objective test: "the only relevant inquiry is 'how a reasonable man in the suspect's shoes would have understood his situation.'" Id.

No reasonable man, when placed in Chad Miller's situation on November 8, 2003, could have believed that he was free to leave the secluded room into which the officers had placed him. No reasonable man would have believed himself able to refuse the requests of the arresting officers. The stop was illegal, and so was the search and interrogation, because Miller was never given his Miranda rights. The evidence must be suppressed.

Respectfully submitted,

3

Chad Miller and Gary Sanders,
By their counsel,

_____
John J. Bonistalli, BBO # 049120
LAW OFFICES OF JOHN J. BONISTALLI
One Financial Center
Boston, MA 02111
(617) 695-3755

4

## CERTIFICATE OF SERVICE

I, John J. Bonistalli, hereby certify that a copy of the foregoing was hand delivered this 29th day of April 2005 to the following:


Jennifer Zacks
Assistant United States Attorney
United States Attorney's Office
Asset Forfeiture Unit
1 Courthouse Way
Suite 9200
Boston, MA 02210

_____
John J. Bonistalli, BBO# 049120