```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,        )
              Plaintiff,         )
                                 )
         v.                      )CIVIL ACTION NO. 04-11555 NMG
                                 )
                                 )
$7,000 in US CURRENCY and        )
$8,000 in US CURRENCY,           )
              Defendants.        )
                                 )
_____  )
                                 )
Chad Miller,                     )
                                 )
Gary Sanders                     )
              Claimants.         )
```

### **UNITED STATES' OPPOSITION TO CLAIMANTS' MOTION TO SUPPRESS**

In this civil forfeiture action, claimants Chad Miller and Gary Sanders have filed a motion to suppress at trial "all evidence and statements" obtained pursuant to the claimants' encounter with law enforcement officials on November 8, 2003 at which the $7,000 and $8,000 that are the in rem defendants in this case (the defendant currency) were seized. As explained below, this motion to suppress should be denied, since the claimants' interactions with law enforcement consisted of their voluntary responses to questions and voluntary consent to search their persons and their luggage -- actions that do not implicate the Fourth Amendment. Even if the claimants' motion to suppress were granted, either in whole or in part, the United States would still be entitled to

-1-

establish the forfeitability of the defendant currency by other evidence, such as that that the United States expects to develop during the discovery process in this action.

As an initial matter, the United States notes that, while one of the claimants (Miller) has submitted an affidavit in support of the motion to suppress, the other claimant, Sanders, has failed to submit an affidavit or any other evidence that would suggest that <u>Sanders'</u> rights were violated or that any evidence relating to <u>Sanders</u> should be suppressed.    As the affidavit of David X. O'Neill, submitted in support of the complaint for forfeiture, indicates, Miller and Sanders were questioned separately, by different officers, and Sanders voluntarily agreed to be interviewed and to a search of his bag and person.  See Miller Aff. at ¶15.  Even assuming, <u>arguendo</u>, that the interview with Miller somehow violated Miller's constitutional rights, there is no evidence that the separate interview of Sanders, conducted by different law enforcement officers, violated Sanders' constitutional rights.  Moreover, despite the claim in the motion to suppress that state criminal charges were filed against Sanders and that the charges against Sanders were dismissed (motion to suppress at n.1), to the knowledge of the United States, no state criminal charges were ever brought against Sanders and no state court suppression ruling was made as to Sanders. Therefore, since there is no evidence supporting it, the motion to suppress should

be denied as to any evidence or statements made by Sanders.

Second, there is no legal or factual basis for suppressing any evidence as to Miller. On the contrary, the uncontested facts indicate that Miller voluntarily consented to answer questions posed by law enforcement officials and to a search of his person and luggage.

As the affidavit of David X. O'Neill describes, Miller and Sanders, when approached by law enforcement officers at South Station, voluntarily agreed to answer questions and to a search of their persons and luggage. Miller does not dispute any of the factual circumstances leading up to the encounter. He does not dispute that he answered the officers' questions or that he gave a series of inconsistent responses to those questions. He does not dispute that he consented to a search of his person and his luggage. He does not dispute that he told the officers that he had been smoking a lot of marijuana in his hotel room and that the smoke may have settled onto his bag.

Instead, Miller claims that, subjectively, he "did not feel as though [he] were free to leave at anytime until after I was questioned and searched" and "did not feel that I had any choice but to accompany the officers and to answer their questions." Miller Aff. However, the subjective impression of the person being questioned is not the test for whether the Fourth Amendment is implicated. As the First Circuit has pointed out, "Although few

people actually feel free to walk away while being questioned by a police officer, the Fourth Amendment is not implicated unless, viewed objectively, the officer's conduct communicates an intention to use official authority to restrain the individual's freedom of movement." United States v. Hornbecker, 316 F.3d 40, 45 (1st Cir. 2003); See United States v. Cardoza, 129 F.3d 6, 14-16 (1st Cir.1997) (collecting cases).   "There are no colorable Fourth Amendment concerns where an officer simply asks a few questions to a civilian, who voluntarily allows the encounter to continue." United States v. One Lot of United States Currency ($36,634), 103 F.3d 1048, 1052 (1st Cir. 1997); See Florida v. Bostick, 501 U.S. 429, 434 (1991).   As the Supreme Court has recently stated:

> We have "held repeatedly that mere police
> questioning does not constitute a seizure."
> Florida v. Bostick, 501 U.S. 429, 434, 1991);
> see also INS v. Delgado, 466 U.S. 210, 212
> (1984). "[E]ven when officers have no basis
> for suspecting a particular individual, they
> may generally ask questions of that
> individual; ask to examine the individual's
> identification; and request consent to search
> his or her luggage." Bostick, supra, at
> 434-435, 111 S.Ct. 2382 (citations omitted).

Muehler v. Mena, 125 S.Ct. 1465, 1471 (2005).

In Miller's affidavit, the only non-subjective evidence offered of any intent to use official authority to restrain him (the touchstone of the Fourth Amendment analysis) is his vague characterization that the officers "directed" him to accompany them

for questioning and his claim that there were a total of five or six officers in plainclothes and two or three in uniform. These claims -- assuming them to be accurate -- are insufficient evidence of any intent to use official police authority to compel Miller's presence. And Miller's primary argument -- that he subjectively "did not feel as though [he] was free to leave" -- is manifestly insufficient to warrant suppression.[1]

In addition, even assuming, arguendo, that the Fourth Amendment were implicated and that the encounter was in some way constitutionally infirm, it is well-established, as a matter of federal forfeiture law, that an illegal seizure will not preclude forfeiture if the government can establish probable cause with untainted evidence obtained through investigation and/or discovery conducted after the initial seizure. See United States v. Rogers, 102 F.3d 641, 648 (1st Cir. 1996) ("[I]t is settled that even an illegal seizure of property does not protect it against forfeiture so long as the government can sustain the forfeiture claim with independent evidence"); United States v. One Lot of U.S. Currency ($36,674), 103 F.3d 1048, 1052 n.3 (1st Cir. 1997); United States

---

[1] In addition, the United States notes that, as the encounter progressed, the contradictory answers supplied by Miller and Sanders, the discovery of the folded money, the admission of Miller that he had been smoking marijuana, coupled with the suspicious behavior that had attracted the attention of law enforcement in the first place, gave ample reason for the continued questioning of Miller and Sanders, and, ultimatelym rose to the level necessary for the seizure of the money.

v. U.S. Currency $31,828, 760 F.2d 228, 230 (8th Cir. 1985)("[A]lthough any evidence which is the product of [an illegal] seizure must be excluded at trial, the forfeiture can proceed if the government can show probable cause with untainted evidence"); United States v. Schiavo, 897 F. Supp. 644 (D. Mass. 1995), aff'd, 94 F.3d 640 (Table), No. 95-1437 (1st Cir. Aug. 19, 1996), 1996 WL 490008 (although evidence derived from an illegal search or seizure is inadmissible in a civil forfeiture proceeding, it can still be forfeited if there is sufficient other evidence); United States v. $8,880 in U.S. Currency, 945 F. Supp. 521 (W.D.N.Y. 1996)( "Although illegally obtained evidence is suppressible in a civil forfeiture case, "the 'res' itself is not subject to suppression in a forfeiture proceeding in the sense that the property itself becomes immune from forfeiture because it was obtained in violation of the Fourth Amendment.")[2] Here, under the discovery scheduled

---

[2] Although the Boston Municipal Court granted Miller's motion to suppress in the state criminal case, Commonwealth v. Miller, No. 04-0392, where, as here, the United States played no role in the state proceeding, this Court is in no way bound by the state court ruling. "[R]ules of 'collateral estoppel' do not require federal courts in a federal forfeiture proceeding to apply a suppression decision that a state court reached in a state prosecution against the same party." United States v. 5 Bell Rock Rd., 896 F.2d 605, 610 (1st Cir. 1990); United States v. Bonilla Romero, 836 F.2d 39, 43 (1st Cir. 1987) (the state result will bind the federal government in such a case only if federal authorities "substantially control[led]" the state action or were "virtually represent[ed]" by the state prosecutor.) Moreover, there is no basis for following the ruling of the state court in this case since neither the largely inaudible tape recording of the Boston Municipal Court's oral decision, nor the docket entry, which simply reads "motion to suppress is allowed after a hearing in open

already ordered by the Court, the United States expects to develop additional evidence during the course of discovery in this civil forfeiture action that will establish the forfeitability of the defendant property.

The United States therefore moves that this Court deny the claimants' motion to suppress.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/Jennifer H. Zacks
Jennifer H. Zacks
Assistant U.S. Attorney

Date: May 16, 2005

CERTIFICATE OF SERVICE

I, Jennifer H. Zacks, certify that on this _16___ day of May, 2005 I served a true and correct copy of the foregoing upon, John Bonistalli, Law Offices of John Bonistalli, One Financial Center, Boston, MA 02111 by first class mail, postage prepaid.

/s/ Jennifer H. Zacks
Jennifer H. Zacks
Assistant U.S. Attorney

---

court," reveals the basis of the Boston Municipal Court's decision or the reasoning underlying it.